**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

__Central__ District of __Utah__
(State)

Case number (*If known*): _____ Chapter __11__

☑ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

1. **Debtor's name**  Stove In A Can, LLC

2. **All other names debtor used in the last 8 years**
   Include any assumed names, trade names, and *doing business as* names
   
   Firefly Innovations  (d/b/a)
   Firefly Innovations, LLC
   Stove In A Can  (d/b/a)

3. **Debtor's federal Employer Identification Number (EIN)**  47-1690347

4. **Debtor's address**

   **Principal place of business**
   2265 North 800 East
   Number    Street
   
   North Logan    UT    84341
   City    State    ZIP Code
   
   Cache County, UT
   County

   **Mailing address, if different from principal place of business**
   Number    Street
   
   P.O. Box
   
   City    State    ZIP Code
   
   **Location of principal assets, if different from principal place of business**
   2080 South Industrial Road
   Number    Street
   
   Suite C
   
   Salt Lake City    UT    84104
   City    State    ZIP Code

5. **Debtor's website (URL)**  http://www.stoveinacan.com

6. **Type of debtor**
   ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   ☐ Partnership (excluding LLP)
   ☐ Other. Specify: _____

Debtor  Stove In A Can, LLC
Name

Case number (if known) _____

### 7. Describe debtor's business

A. Check one:

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☑ None of the above

B. Check all that apply:

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

423910

### 8. Under which chapter of the Bankruptcy Code is the debtor filing?

Check one:

☐ Chapter 7
☐ Chapter 9
☑ Chapter 11. Check all that apply:

  ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (amount subject to adjustment on 4/01/16 and every 3 years after that).
  
  ☑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  
  ☐ A plan is being filed with this petition.
  
  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  
  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  
  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

### 9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?

If more than 2 cases, attach a separate list.

☐ No
☑ Yes. District  Central D. of Utah   When  11 / 05 / 2015   Case number  15-30400
                                              MM / DD / YYYY

District _____  When _____  Case number _____
                           MM / DD / YYYY

### 10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?

List all cases. If more than 1, attach a separate list.

☑ No
☐ Yes. Debtor _____  Relationship _____
       District _____  When _____
                                  MM / DD / YYYY
       Case number, if known _____

Official Form 201     Voluntary Petition for Non-Individuals Filing for Bankruptcy     page 2

Debtor  Stove In A Can, LLC  
     Name

Case number (if known) _____

**11. Why is the case filed in *this district*?**

Check all that apply:

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

☑ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (Check all that apply.)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other  Inventory of Debtor must be released to manager's control to pay urgent obligations and fulfill customer orders.

Where is the property?  2080 South Industrial Road  
     Number     Street

Suite C

Salt Lake City     UT     84104  
City     State     ZIP Code

**Is the property insured?**

☐ No

☑ Yes. Insurance agency  Lloyds of London

Contact name  Neal Dastrup Insurance, c/o Sam Griesel

Phone  801-788-4343

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

Check one:

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49  ☐ 1,000-5,000  ☐ 25,001-50,000
☐ 50-99  ☐ 5,001-10,000  ☐ 50,001-100,000
☐ 100-199  ☐ 10,001-25,000  ☐ More than 100,000
☐ 200-999

**15. Estimated assets**

☑ $0-$50,000  ☐ $1,000,001-$10 million  ☐ $500,000,001-$1 billion
☐ $50,001-$100,000  ☐ $10,000,001-$50 million  ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000  ☐ $50,000,001-$100 million  ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million  ☐ $100,000,001-$500 million  ☐ More than $50 billion

Debtor    Stove In A Can, LLC    Case number (if known)
        Name

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☑ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  12 / 16 / 2015
            MM / DD / YYYY

X _/s/ Gust T. Schultz_    Gust T. Schultz
Signature of authorized representative of debtor    Printed name

Title  managing member of My Emergency Store, LLC, which is the Debtor's managing member

**18. Signature of attorney**

X _/s/ David P. Billings_    Date  12 / 16 / 2015
Signature of attorney for debtor        MM / DD / YYYY

David P. Billings
Printed name

Stormont Billings, PLLC
Firm name

525 East 100 South, Suite 275B
Number    Street

Salt Lake City        UT    84102
City        State    ZIP Code

801.448.7085        david@stormontbillings.com
Contact phone        Email address

11510        UT
Bar number        State

# Stove in a Can, LLC

**Balance Sheet**
19-Nov-15

|  | 2015 |  |
|---|---|---|
| **Assets** | | |
| Current Assets | | |
|   Cash | $ | 700.00 |
|   Accounts Receivable | | 4,671.00 |
|   Inventory | | 35,000.00 |
|   Prepaid Expenses | | - |
|   <Other Current Asset> | | - |
|     Total Current Assets | $ | 40,371.00 |
| Fixed Assets | | |
|   Land | $ | - |
|   Equipment | | - |
|   Accumulated Depreciation - Equipment | | 1,176.00 |
|   <Other Fixed Asset> | | - |
|     Total Fixed Assets | $ | 1,176.00 |
|     **Total Assets** | $ | **41,547.00** |
| **Liabilities & Equity** | | |
| Current Liabilities | | |
|   Accounts Payable | $ | 64,004.00 |
|   Accrued Liabilities | | - |
|   Deferred Income | | - |
|   <Other Current Liability> | | - |
|     Total Current Liabilities | $ | 64,004.00 |
| Long Term Liabilities | | |
|   Notes Payable | $ | - |
|   <Other Long Term Liability> | | - |
|     Total Long Term Liabilities | $ | - |
|     Total Liabilities | $ | 64,004.00 |
| Equity | | |
|   Paid-In Capital | $ | 220,000.00 |
|   <Other Equity> | | 367,000.00 |
|   Retained Earnings | | - |
|   Current Year Earnings | | 80,000.00 |
|     Total Equity | $ | 667,000.00 |
|     **Total Liabilities & E** | | $ |

CHARLES A. STORMONT (11490)
DAVID P. BILLINGS (11510)
**STORMONT BILLINGS, PLLC**
525 East 100 South, Suite 275B
Salt Lake City, UT 84102
Telephone: (801) 448-7085
Facsimile: (801) 606-2796
charles@stormontbillings.com
david@stormontbillings.com
*Proposed attorneys for Stove In A Can, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| IN RE:<br><br>STOVE IN A CAN, LLC,<br><br>Debtor. | **11 U.S.C. § 1116(1)(B) DECLARATION OF GUST T. SCHULTZ**<br><br>Bankruptcy Case No. _____<br><br>Chapter 11<br>Hon. Judge _____ |

The undersigned, Gust T. Schultz, hereby declares as follows:

1. I am the majority interest holder and managing member of My Emergency Store, LLC (**My Emergency Store**). In turn, My Emergency Store is the managing member and 58.5% interest holder in Stove In A Can, LLC (the **Debtor**). To the best of my knowledge, based upon the inquiries described below, the following statements are true.

2. On August 26, 2014, signing as manager, I converted Stove In A Can DBA into Stove In A Can, LLC. That same day, the Debtor was registered with the Utah Department of Commerce, listing Richard Chea and Thomas Poulos as managers. On or about March 20, 2014, Schultz was formally added as a manager through an Information Change with Utah Department of Commerce. True and correct copies of the Statement of Conversion, the Certificate of

1

Organization, and the Information Change are attached to the Motion for the Entry of an Order (1) extending the deadline to file the Debtor's statements and schedules until 14 days after the Debtor's books and records are in possession and control of the Debtor's accountant, and (2) directing the Debtor's minority members to turnover all property of the estate to the Debtor's accountant.[1] (the **Deadline and Turnover Motion**) as **Exhibit A**.

3. On or about September 15, 2014, My Emergency Store entered into an agreement with Firefly Innovations, LLC (**Firefly**) to purchase all of Firefly's rights to portable stove and fuel cell system called Stove in a Can, including Firefly's DBAs Firefly Innovations & Stove In A Can, inventory of the Stove in a Can product, and intellectual property relating to the product (the **Assets**) for $246,000 (the **Agreement**). A true and correct copy of the Agreement's closing documents are attached to the Deadline and Turnover Motion as **Exhibit B**.

4. Under the Agreement, $140,000 was to be paid at closing on September 15, 2014. The remaining $106,000 was to be paid in installments over the following year, as detailed in a promissory note. *See* Exhibit B at 2, 6, 15-16.

5. To close the Agreement and to make the initial installment payments under the promissory note, I sought investors in a new company, the Debtor. I entered into an oral agreement with Mr. Chea, to find investors in exchange for a 10 percent interest in the Debtor.

6. Present at the closing on the Agreement were Eric D. Child, manager of Firefly, Mr. Chea, manager of the Debtor, Sumana Chea, Mr. Chea's wife, myself, manager of My Emergency Store, and Brady Gibbs, an attorney acting as closing agent.

---

[1] An application to hire Jensen & Associates, P.C. as the Debtor's accountant is filed contemporaneously with this declaration.

2

7. In the summer and fall of 2014, Mr. Chea found five parties who invested $27,500 each for a 5% interest in the Debtor. Shortly thereafter, Mr. Chea located two more investors who invested $13,750 for a 2.5% and 4% stake in the Debtor,[2] respectively.

8. While the Agreement was between My Emergency Store and Firefly, I had previously discussed with Mr. Chea my plan to have the Debtor make all the payments under the Agreement and then after the final payment on the promissory note was made then, My Emergency Store would transfer all the rights to the Assets to the Debtor. This intent was never formalized in a written document, although the Debtor did make payments on the promissory note since September 15, 2014.

9. From September 10, 2014 through October 30, 2014, members signed the Debtor's Articles of Organization prepared by Mr. Chea. The Articles of Organization stated the company was to be manager managed and the following were listed as members: My Emergency Store, Robert J. Bauer, Dr. Rey P. Roa, Mr. and Ms. Chea, Boun -3- Trucking, Inc., Thelma Clam Long, Jerry H. Vergin, Astar Solutions, LLC and Schultz. Under the Articles of Organization, Schultz was also named the Debtor's CEO/President, while Ms. Chea was named the Debtor's Secretary/Treasurer. A true and correct copy of the Articles of Organization is attached to the Deadline and Turnover Motion as **Exhibit C**.

10. At a members meeting in late January 2015, I presented the Debtor's members with a copy of an operating agreement prepared by Mr. Gibbs for their vote. After a majority of interest holders voted in favor of the Operating Agreement, I told all those at the meeting to review the Operating Agreement with their tax and/or legal advisor if they wished and that if they had any questions or concerns, we would hold another meeting with Mr. Gibbs where he could explain the

---

[2] Upon information and belief, Ms. Long contributed an additional $8,250 to the Debtor for an additional 1.5% interest in the Debtor over Dr. Roa.

3

Operating Agreement to them. At the meeting, all the members but Joseph Bradbury, a 5% interest holder, initialed next to their percentage interest in the Debtor. A true and correct copy of the Operating Agreement is attached to the Deadline and Turnover Motion as **Exhibit D**.

11. None of the members contacted me to express any questions or concerns about the Operating Agreement when I or My Emergency Store was manager. My Emergency Store and I conducted ourselves in accordance with my understanding of the Operating Agreement as if the Operating Agreement was in full force and effect.

12. While those seven members contributed $173,250 in initial cash capital contributions for combined 31.5% interest in the Debtor, Mr. Chea received a 10% stake for locating these investors and My Emergency Store received the remaining 58.5% interest in the Debtor for providing the Assets to the Debtor via the Agreement. Therefore, Exhibit C to the Operating Agreement incorrectly states that My Emergency Store contributed $275,000 to the Debtor, although My Emergency Store is informed and believes that the Assets are worth in excess of $275,000.

13. On January 21, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Richard Chea to be removed as a manager of the Debtor. A true and correct copy of the January 21, 2015 Letter of Resignation filed with the Department of Commerce is attached to the Deadline and Turnover Motion as **Exhibit E**.

14. During the first six to eight months of 2015, Ms. Chea and I had numerous disputes about accounting and management of the Debtor's finances.

4

15. By Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Ms. Chea to be removed as an officer of the Debtor in January 2015.

16. However, despite the fact that Ms. Chea was no longer Treasurer/Secretary of the Debtor, she maintained control the Debtor's books and records, as well as:

    a. The Debtor's PayPal account, ending in x3434, which remained in her name despite my repeated requests that it be put in the name of the Debtor; and

    b. The Debtor's KeyBank account, ending in x2363, despite my repeated requests that she turn over login information to me.

17. On May 18, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Robert Bauer to be added as a manager of the Debtor. A true and correct copy of the May 18, 2015 Summary of Online Changes filed with the Department of Commerce is attached to the Deadline and Turnover Motion as **Exhibit F**.

18. On June 12, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Schultz to be removed as a manager of the Debtor. A true and correct copy of the June 12, 2015 Letter of Resignation is attached to the Deadline and Turnover Motion as **Exhibit G**.

19. On August 13, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Thomas Paulos to be removed as manager of the Debtor.

5

A true and correct copy of the August 13, 2015 Summary of Online Changes filed with the Department of Commerce is attached to the Deadline and Turnover Motion as **Exhibit H**.

20. On September 11, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Robert J. Bauer to be removed as manager of the Debtor and Shari Anderson and Deborah French were added as managers. A true and correct copy of the September 11, 2015 Summary of Online Changes filed with the Department of Commerce is attached to the Deadline and Turnover Motion as **Exhibit I**.

21. Nevertheless, Mr. Bauer retains possession and control of the Debtor's Chase Bank account, ending x6558, despite my repeated requests that he turn over login information to me.

22. The Debtor was unable to make the final $56,000 payment on the Agreement for the Assets due on September 15, 2015.

23. On September 1, 2015, I negotiated an addendum to the promissory note that was part of the Agreement whereby only $10,000 would have to be paid on September 15, 2015. Thereafter, two $1,000 interest payments would be made on October 15, 2015 and November 15, 2015, then another $10,000 payment on December 15, 2015, followed by two more $1,000 interest payments on January 15, 2016 and February 15, 2016. The remaining $36,000 would be paid on March 15, 2016. A true and correct copy of the Addendum to Promissory Note is attached hereto as **Exhibit J**.

24. Under the terms of the Agreement, should there be a payment default of the promissory note, the Assets, including the patents on the technology underlying the fuel cells, would revert to Firefly. *See* Exhibit B at 6.

6

25.     For the next two weeks, I scrambled to find funds to make the $10,000 payment and on September 15, 2015, Shari D. Anderson agreed to make the $10,000 payment on the Debtor's behalf.  In exchange, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Ms. Anderson to be listed as a manager of the Debtor with the Utah Department of Commerce.

26.     The minority members have made no payments on the Agreement's promissory note.

27.     Despite the fact that Mr. Bauer and Mr. Chea were no longer managers of the Debtor, they and other minority members filed an action purportedly on behalf of the Debtor and themselves against My Emergency Store and myself on or about October 28, 2015 in the First Judicial District, Case No. 150100141 (the **state court action**).

28.     On November 5, 2015, I caused the Debtor to file a *pro se* voluntary petition for protection under chapter 11 of the Bankruptcy Code. *See* Case No. 15-30400 at Docket No. 1.

29.     On November 17, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused it to be added as a manager and Schultz and Deborah French to be removed as managers of the Debtor.  A true and correct copy of the November 17, 2015 Summary of Online Changes filed with the Department of Commerce is attached to the Deadline and Turnover Motion as **Exhibit K**.

30.     That same day, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its

manager, My Emergency Store caused the Debtor to retain Stormont Billings, PLLC as its bankruptcy counsel. I understand this retention is subject to court approval.

31. Ms. Chea and Mr. Bauer continue to possess and control the Debtor's books and records, as well as accounts containing property of the estate. They have refused to turn them over to me or to Carl Jensen of Jensen & Associates, P.C., the Debtor's accountant. A true and correct copy of the December 4, 2015 Demand Letter is attached the Deadline and Turnover Motion as **Exhibit L**.

32. Due to statements by the Cheas and other minority members alleging I and My Emergency Store lacked authority to act on behalf the Debtor, International Fulfillment Solutions, LLC d/b/a FirstMile d/b/a IFS 360 (**FirstMile**) refused to release any of the roughly 100,000 of Product it was currently warehousing for the Debtor and any funds FirstMile has received for shipments.

33. These refusals have made it impossible for the Debtor has been to create a statement of operations, a cash-flow statement, or prepare federal tax returns. Based on the financial information available to the Debtor's current management, the Debtor has prepared a balance sheet. However, the balance sheet's figures may need to be revised once Ms. Chea turns over the Debtor's financial information in her possession.

34. The Debtor intends to pursue its legal remedies under the Bankruptcy Code to ensure these items are turned over to the Debtor, including but not limited to filing the Deadline and Turnover Motion. When this occurs and the Debtor is able to complete and accurate financial statements, statements of financial affairs and schedules, it will provide them as required under the Bankruptcy Code.

35. Because I was not a manager of the Debtor on November 5, 2015, the prior bankruptcy case, Case No. 15-30400, was dismissed without prejudice on December 1, 2015. On December 2, 2015, the minority members asked for a hearing on their motion for a temporary restraining order (**TRO**) in the state court action. Among other things, the TRO asks that the state court order me and My Emergency Store from acting on behalf of the Debtor, to convey the Assets to the Debtor, to turnover the Debtor's website (StoveInACan.com) and domain name to them, that Mr. Bauer to named sole manager of the Debtor with authority to act in accordance with state law, and implicitly, for a determination that the Operating Agreement is not binding on the Debtor or the members. True and correct copies of the TRO and the request for a hearing are attached hereto as **Exhibit M**.

I swear under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATE: 12-16-15

Gust T. Schultz

### Special Meeting of Stove In A Can, LLC

WHEREAS, on December 11, 2015, Member My Emergency Store, LLC called for a special meeting of the members of Stove In A Can, LLC (the **Company**) pursuant to Paragraph C of Article X of the Operating Agreement;

WHEREAS, pursuant to Paragraph D of Article X of the Operating Agreement, My Emergency Store, LLC sent notice of this special meeting via U.S. Mail first-class mail, postage prepaid on December 11, 2015;

WHEREAS, a special meeting of the Company was held on December 16, 2015 at 5:00 p.m. Present at the meeting were a quorum as defined by Paragraph E of Article X of the Operating Agreement. My Emergency Store, LLC, representing a majority of the Capital Interests represented in person or by proxy as defined by Paragraph G of Article II and Paragraph F of Article X of the Operating Agreement, made up that quorum;

WHEREAS, the order of business as defined by Paragraph I of Article X of the Operating Agreement was attended to as amended by the consent of the majority of the Members present at the special meeting; and

WHEREAS, the special meeting, having met the requirements of Article X of the Operating Agreement, the matters determined therein constitutes a Formal Action by the Members as defined by Paragraph H of Article X of the Operating Agreement.

THEREFORE, the Company, by and through the Members present at the special meeting on December 16, 2015, hereby RESOLVES the following:

1. My Emergency Store, LLC is the majority Capital Interests holder with 58.5 percent capital interest in the Company and is the Manager of the Company;

1

2. Pursuant to Article VII of the Operating Agreement, the Company will Indemnify My Emergency Store, LLC and its manager Gust T. Schultz as to all claims relating to, arising out of, that have been or could have been brought against them in Case No. 150100141 currently pending in the First Judicial District, State of Utah, the Hon. Judge Brian G. Cannell presiding (the **state court action**), in arbitration or in any court of competent jurisdiction;

3. Pursuant to Utah Code § 48-3a-805(1), the Company hereby appoints My Emergency Store, LLC and the accounting firm of Jensen & Associates, P.C. to a special investigative committee of the Company regarding the claims asserted in the state court action.

4. The Company has ratified the prior engagement of the law firm of Stormont Billings, PLLC (the **Firm**) on November 17, 2015, along with the agreement for limited scope legal services dated November 17, 2015 and the supplemental agreement for limited scope legal services dated December 11, 2015. The Company ratifies all action taken by the Firm to date on its behalf;

5. The Company directs My Emergency Store, LLC by and through its manager Gust T. Schultz to sign a voluntary petition for protection under Chapter 11 of Title 11 of the United States Code on behalf of the Company; and

6. The Company directs the Firm to make all necessary filings in the state court action and the bankruptcy court to effect this resolution and to represent the Company's interests, including but not limited to the bankruptcy petition.

DATED this 16th day of December, 2015

PRESENT:

GUST SCHULTZ 5:00 PM
FOR MY EMERGENCY 12-16-15
STORE.

**MY EMERGENCY STORE, LLC**
BY: Gust T. Schultz _Gust T. Schultz_
ITS: Member-Manager   FOR MY EMERGENCY STORE

2

Dear Members,

Pursuant to Article X of the Operating Agreement I write to inform you about a scheduled meeting for Stove in a Can, LLC members. It is scheduled to take place at **5:00 p.m.** on **Wednesday, December 16, 2015** at the offices of Stormont Billings, PLLC, **525 East 100 South, Suite 275B Salt Lake City, Utah 84102.** We will discuss important business and make several important decisions regarding the future of the company. You should plan to attend.

Below is a list of agenda items for the meeting:

- Financial matters and information needed by CPA
    - Company books and records;
    - Records from PayPal;
    - Records from Chase Bank;
    - Records from Key Bank
    - Records from Amazon
- Management
    - Current managers are Shari D. Anderson & My Emergency Store, LLC (whose managers are Gust Schultz, Deborah French)
    - Vote to re-confirm their roles
- State Court proceeding
- Bankruptcy filing
- Minority Members Buy Out Proposal

We will discus all of the above items and make important decisions with regard to each at the meeting. I look forward to seeing you there.

Best regards,

*[signature]*

Gust Schultz

VOTED ON TO RECOVER MAIN WEB-SITE FORUM FOUNDATION X - (JOSH SLOVAN)