Mona L. Burton, 5399
Ellen E. Ostrow, 14743
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101-1031
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
    *Attorneys for Non-MES Members*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In Re:<br><br>STOVE IN A CAN, LLC,<br><br>                Debtor. | Case No. 15-31630<br><br>Chapter 11<br><br>Hon. R. Kimball Mosier<br><br>**CONSOLIDATED OBJECTION TO DEBTOR'S MOTIONS AND APPLICATIONS: (A) TO EXTEND TIME TO FILE STATEMENTS AND SCHEDULES, (B) DIRECTING TURNOVER OF PROPERTY OF THE ESTATE BY MINORITY MEMBERS, (C) TO STAY THE STATE COURT PROCEEDING, (D) FOR AN ORDER RELEASING INVENTORY, (E) TO RETAIN COUNSEL AND (F) TO RETAIN ACCOUNTANTS** |

Robert Bauer, Jerry Vergin, Boun-3-Trucking, Thelma Long, Lane and Chew Yuen Liau, Ray P. Roa, and Joseph and Margie Bradbury (collectively, the "**Non-MES Members**")[1], submit this Consolidated Objection to the Debtor's Motions and Applications described above ("**Motions and Applications**") as follows:

## INTRODUCTION

---

[1] The Non-MES Members are members of the Debtor. My Emergency Store, LLC ("**MES**") purports to also be a member of the Debtor. Richard and Sumana Chea are also members of the Debtor.

1

The Motions and Applications should be denied for one clear, simple reason: the filing of the petition by the Debtor was not authorized under applicable law.[2] The Operating Agreement, on which MES relies for its purported authority on its sole vote to cause the Debtor to file bankruptcy, was not signed by any of the Non-MES Members and is not enforceable against them under Utah's Statute of Frauds. The Utah Limited Liability Act, 48-3a-101 *et seq* requires the consent of all members for the any non-ordinary course act, which the Voluntary Petition on its face shows did not occur in connection with the filing of the Voluntary Petition.

## RESPONSE TO DEBTOR'S FACTUAL ALLEGATIONS[3]

1.     On August 26, 2014, Gust T. Schultz ("**Schultz**"), signing as manager, converted Stove In A Can DBA into Stove In A Can, LLC. That same day, the Debtor was registered with the Utah Department of Commerce, listing Richard Chea and Thomas Poulos as managers. On or about March 20, 2015, Schultz was formally added as a manager through an Information Change with Utah Department of Commerce. True and correct copies of the Statement of Conversion, the Certificate of Organization, and the Information Change are attached hereto as **Exhibit A**. *See* Docket No. 1, at 6-7 ¶ 2.

RESPONSE: Admit.

2.     In 2014, My Emergency Store, LLC (**My Emergency Store**) entered into an agreement with Firefly Innovations, LLC (**Firefly**) to purchase all of Firefly's rights to a portable stove and fuel cell system called Stove in a Can, including Firefly's DBAs Firefly Innovations & Stove In A Can, inventory of the Stove in a Can product, and intellectual property

---

[2]     The Non-MES Members are concurrently with the filing of this Consolidated Objection filing a Motion to Dismiss the Bankruptcy Case.
[3]     The Factual Allegations for all Motions are the same, and the Response is made for the purpose of opposing all the Motions.

relating to the product (the **Assets**) for $246,000 (the **Agreement**). *See* Docket No. 1 at 7 ¶ 3. A true and correct copy of the Agreement's closing documents are attached as **Exhibit B**.

RESPONSE: Denied for lack of knowledge. The Agreement referred to in Fact No. 2 is not attached to the Motions.

3.      Under the Agreement, $140,000 of the Purchase Price was to be paid at closing on September 15, 2014. The remaining $106,000 was to be paid in installments over the following year, as detailed in a promissory note. *See* Docket No. 1 at 7 ¶ 4; Exhibit B at 2, 6, 15-16.

RESPONSE: Denied for lack of knowledge. The Agreement referred to in Fact No. 3 is not attached to the Motions.

4.      To close the sale with Firefly, Schultz, the member manager and 88% interest holder of My Emergency Store, sought investors in a new company, the Debtor. Richard Chea orally agreed with Schultz to find investors in the Debtor in exchange for a 10 percent interest in the Debtor. *See* Docket No. 1 at 7 ¶ 5.

RESPONSE: The Non-MES Members deny this fact for lack of knowledge.

5.      Present at the closing on the Agreement were Eric D. Child, manager of Firefly, Mr. Chea, manager of the Debtor, Ms. Chea, Schultz, manager of My Emergency Store, and Brady T. Gibbs, an attorney acting as closing agent. *See* Docket No. 1 at 7 ¶ 6.

RESPONSE: The Non-MES Members deny this fact for lack of knowledge.

6.      In the summer and early fall of 2014, Mr. Chea found five parties (Boun-3- Trucking, Inc., Robert J. Bauer, Joseph Bradbury, Jerry H. Vergin, and Astar Solutions, LLC, respectively) who invested $27,500 each for a 5% interest in the Debtor. Shortly thereafter, Mr. Chea located two more investors (Thelma Calma Long and Dr. Rey P. Roa) who invested $13,750 for a 2.5% and 4% stake in the Debtor, respectively. *See* Docket No. 1 at 8 ¶ 7.

RESPONSE: The Non-MES Members admit that they contributed monies in exchange for member interests in the Debtor and deny the remaining allegations of Fact 6 for lack of knowledge.

7.     While the Agreement was between My Emergency Store and Firefly, Schultz had previously discussed with Mr. Chea Schultz's plan to have the Debtor make all the payments under the Agreement. Once the final payment on the promissory note was made, My Emergency Store would then transfer all the rights to the Assets to the Debtor. This intent was never formalized in a written document, although the Debtor did make payments on the Agreement's promissory note since September 15, 2014 evidencing the plan. *See* Docket No. 1 at 8 ¶ 8.

RESPONSE: The Non-MES Members admit that the Debtor did make payments on the promissory note owed by MES to Firefly, and deny the remaining allegations for lack of knowledge.

8.     From September 10, 2014 through October 30, 2014, members signed the Debtor's Articles of Organization prepared by Mr. Chea. The Articles of Organization stated the company was to be manager managed and the following were listed as members: My Emergency Store, Robert J. Bauer, Dr. Rey P. Roa, Richard L. & Sumana Chea, Boun -3- Trucking, Inc., Thelma Clam Long, Jerry H. Vergin, Astar Solutions, LLC and Schultz. Under the Articles of Organization, Schultz was also named the Debtor's CEO/President, while Sumana Chea, Mr. Chea's wife, was named the Debtor's Secretary/Treasurer. A true and correct copy of the Articles of Organization are attached hereto as **Exhibit C**. *See* Docket No. 1 at 8 ¶ 9.

RESPONSE: The Non-MES Members state that the Exhibit C speaks for itself, admit their signatures appear on Exhibit C and deny the remaining allegations in Fact No. 8 for lack

of knowledge.

9.      At a members meeting in late January 2015, Schultz presented the Debtor's members with a copy of an operating agreement prepared by Mr. Gibbs for their vote. After a majority of interest holders voted in favor of the Operating Agreement, Schultz told all those at the meeting to review the Operating Agreement with their tax and/or legal advisor if they wished and that if they had any questions or concerns, the members would hold another meeting with Mr. Gibbs where he could explain the Operating Agreement to the members. At the meeting, all the members but Joseph Bradbury, a 5% interest holder, initialed next to their percentage interest in the Debtor. A true and correct copy of the Operating Agreement is attached hereto as **Exhibit D**. *See* Docket No. 1 at 8-9 ¶ 10.

RESPONSE:  The Non-MES Members state that Exhibit D speaks for itself, admit they attended a meeting and deny the remaining allegations in Fact No. 9 for lack of knowledge.

10.     None of the members contacted Schultz to express any questions or concerns about the Operating Agreement when he or My Emergency Store was manager. Schultz and My Emergency Store conducted themselves in accordance with their understanding of the Operating Agreement as if the Operating Agreement was in full force and effect. *See* Docket No. 1 at 9 at ¶ 11.

RESPONSE:  Deny.  The Non-MES Members affirmatively allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

11.     While those seven members contributed $173,250 in initial cash capital contributions for combined 31.5% interest in the Debtor, Mr. Chea received a 10% stake for locating these investors and My Emergency Store received the remaining 58.5% interest in the

Debtor for, *inter alia*, providing the Assets to the Debtor via the Agreement. Therefore, to the extent Exhibit C to the Operating Agreement is construed as reporting cash capital contributions, it incorrectly states that My Emergency Store contributed $275,000 to the Debtor; on the other hand, it correctly reports the dollar value assigned to the Assets and sweat equity contributed by My Emergency Store, which My Emergency Store is informed and believes are actually worth in excess of $275,000. *See* Docket No. 1 at 9 ¶ 12.

RESPONSE: The Non-MES Members admit they contributed monies to the Debtor in exchange for member interests in the Debtor and deny the remaining allegations of Fact No. 11 for lack of knowledge.

12.    On January 21, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Richard Chea to be removed as a manager of the Debtor. A true and correct copy of the January 21, 2015 Letter of Resignation is attached hereto as **Exhibit E**. See Docket No. 1 at 9 ¶ 13.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 12 for lack of knowledge. The Non-MES Members specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

13.    During the first six to eight months of 2015, Ms. Chea and Schultz had numerous disputes about accounting and management of the Debtor's finances. *See* Docket No. 1 at 9 ¶ 14.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 13 for lack of knowledge.

14.    By Consent of the Members as defined by Article II paragraph I of the

Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Ms. Chea to be removed as an officer of the Debtor pre-petition. *See* Docket No. 1 at 10 ¶ 15.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 12 for lack of knowledge. The Non-MES Members specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

15. However, despite the fact that Ms. Chea was no longer Treasurer/Secretary of the Debtor, she maintained control the Debtor's books and records, as well as:

    a. The Debtor's PayPal account, ending in x3434, which remained in her name despite Schultz's repeated requests that it be put in the name of the Debtor; and

    b. The Debtor's KeyBank account, ending in x2363, despite Schultz' repeated requests that she turn over login information to him.

*See* Docket No. 1 at 10 ¶ 16.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 15. The Non-MES Members specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

16. On May 18, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Robert Bauer to be added as a manager of the Debtor, along with Schultz. A true and correct copy of the May 18, 2015 Summary of Online Changes filed with the Department of Commerce is attached hereto as **Exhibit F**. *See* Docket No. 1 at 10 ¶ 17.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 16. The Non-MES Members specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5. The Non-MES Members admit that Bauer is the manager of the Debtor.

17. On June 12, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Schultz to be removed as a manager of the Debtor. A true and correct copy of the June 12, 2015 Letter of Resignation is attached hereto as **Exhibit G**. *See* Docket No. 1 at 10 ¶ 18.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 17. The Non-MES Members specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

18. On August 13, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Thomas Poulos to be removed as manager of the Debtor. A true and correct copy of the August 13, 2015 Summary of Online Changes filed with the Department of Commerce is attached hereto as **Exhibit H**. *See* Docket No. 1 at 10-11 ¶ 19.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 18. The Non-MES Members specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

19. On September 11, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating

Agreement, through its manager, My Emergency Store caused Robert J. Bauer to be removed as manager of the Debtor and Shari Anderson and Deborah French were added as managers. A true and correct copy of the September 11, 2015 Summary of Online Changes filed with the Department of Commerce is attached hereto as **Exhibit I**. *See* Docket No. 1 at 11 ¶ 20.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 18. The Non-MES Members specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

20.     Nevertheless, Mr. Bauer retains possession and control of the Debtor's Chase Bank account, ending x6558, despite Schultz's repeated requests that Mr. Bauer turn over login information to Schultz. *See* Docket No. 1 at 11 ¶ 21.

RESPONSE: The Non-MES Members admit that Mr. Bauer retains possession and control of the account in question and affirmatively allege Mr. Schultz is not entitled to control of the account.

21.     The Debtor was unable to make the final $56,000 payment on the Agreement for the Assets due on September 15, 2015. *See* Docket No. 1 at 11 ¶ 22.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 21 for lack of knowledge and affirmatively allege the Agreement was not attached as an exhibit to the Debtor's Motions and that the Debtor has no liability under the documents which have been produced.

22.     On September 1, 2015, Schultz negotiated an addendum to the promissory note that was part of the Agreement whereby only $10,000 would have to be paid on September 15, 2015. Thereafter, two $1,000 interest payments would be made on October 15, 2015 and November 15, 2015, then another $10,000 payment on December 15, 2015, followed by two

more $1,000 interest payments on January 15, 2016 and February 15, 2016. The remaining $36,000 would be paid on March 15, 2016. A true and correct copy of the Addendum to Promissory Note is attached hereto as **Exhibit J**. *See* Docket No. 1 at 11 ¶ 23.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 22 for lack of knowledge and affirmatively allege the Agreement was not attached as an exhibit to the Debtor's Motions and that the Debtor has no liability under the documents which have been produced.

23.     Under the terms of the Agreement, should there be a payment default of the promissory note, the Assets, including the patents on the technology underlying the fuel cells, would revert to Firefly. *See* Exhibit B at 6; Docket No. 1 at 11 ¶ 24.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 23 for lack of knowledge and affirmatively allege the Agreement was not attached as an exhibit to the Debtor's Motions and that the Debtor has no liability under the documents which have been produced.

24.     For the next two weeks, Schultz scrambled to find funds to make the $10,000 payment and on September 15, 2015, Shari D. Anderson agreed to make the $10,000 payment on the Debtor's behalf. In exchange, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused Ms. Anderson to be listed as a manager of the Debtor with the Utah Department of Commerce. *See* Docket No. 1 at 11 ¶ 25.

RESPONSE: The Non-MES Members deny the allegations of the first sentence of Fact No. 24 for lack of knowledge. The Non-MES Members deny the remaining allegations of Fact No. 24 and specifically allege that the Operating Agreement is unenforceable against them

under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

25.     The minority members have made no payments on the Agreement's promissory note. *See* Docket No. 1 at 12 ¶ 26.

RESPONSE: The Non-MES Members admit Fact No. 25 and specifically allege they have no liability on the promissory note. The Non-MES Members allege that the source of the $140,000 initial payment on the Purchase Price under the Agreement by MES was capital contributions made by the Non-MES Members.

26.     Despite the fact that Mr. Bauer and Mr. Chea were no longer managers of the Debtor, they and other minority members filed an action purportedly on behalf of the Debtor and themselves against My Emergency Store and Schultz on or about October 28, 2015 in the First Judicial District, Case No. 150100441 (the **state court action**). *See* Docket No. 1 at 12 ¶ 27.

RESPONSE: The Non-MES Members deny that Mr. Bauer is no longer a manager of the Debtor and admit the remaining allegations of Fact No. 26.

27.     On November 5, 2015, Schultz caused the Debtor to file a *pro se* voluntary petition for protection under chapter 11 of the Bankruptcy Code. *See* Case No. 15-30400 at Docket No. 1; Docket No. 1 at 12 ¶ 28.

RESPONSE: The Non-MES Members deny Fact No. 27.

28.     On November 17, 2015, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused it to be added as a manager and Schultz and Deborah French to be removed as managers of the Debtor. A true and correct copy of the November 17, 2015 Summary of Online Changes filed with the

11

Department of Commerce is attached hereto as **Exhibit K**. *See* Docket No. 1 at 12 ¶ 29.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 28 for lack of knowledge and specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

29.     That same day, by Consent of the Members as defined by Article II paragraph I of the Operating Agreement and pursuant to Article VI of the Operating Agreement, through its manager, My Emergency Store caused the Debtor to retain Stormont Billings, PLLC as its bankruptcy counsel. The Debtor understands this retention is subject to court approval. *See* Docket No. 1 at 12-13 ¶ 30.

RESPONSE: The Non-MES Members deny the allegations of Fact No. 29 for lack of knowledge and specifically allege that the Operating Agreement is unenforceable against them under the Utah Statute of Frauds, Utah Code Ann. 25-5-5.

30.     Ms. Chea and Mr. Bauer continue to possess and control the Debtor's books and records, as well as accounts containing property of the estate. They have refused to turn them over to Schultz, or to the Carl Jensen of Jensen & Associates, P.C., the Debtor's accountant. A true and correct copy of the December 4, 2015 Demand Letter is attached hereto as **Exhibit L**. *See* Docket No. 1 at 13 ¶ 31.

RESPONSE: The Non-MES Members admit that certain books and records have not been turned over to Mr. Schultz or to the accountant and affirmatively allege that neither is entitled to possession of such books and records.

31.     Due to statements by the Cheas and other minority members alleging Schultz and My Emergency Store lacked authority to act on behalf the Debtor, International Fulfillment Solutions, LLC d/b/a FirstMile d/b/a IFS 360 (**FirstMile**) refused to release any of

the roughly $100,000 of Product it was currently warehousing for the Debtor and any funds FirstMile has received for shipments. *See* Docket No. 1 at 13 ¶ 32.

RESPONSE: The Non-MES Members deny Fact No. 31 for lack of knowledge and affirmatively allege that Schultz lacks authority to act as manager of the Debtor.

32.     These refusals have made it impossible for the Debtor to create a statement of operations, a cash-flow statement, or prepare federal tax returns. Based on the financial information available to the Debtor's current management, the Debtor has prepared a balance sheet. However, the balance sheet's figures may need to be revised once Ms. Chea turns over the Debtor's financial information in her possession. *See* Docket No. 1 at 13 ¶ 33.

RESPONSE: The Non-MES Members deny Fact No. 32.

33.     Because Schultz was not a manager of the Debtor on November 5, 2015, the prior bankruptcy case, Case No. 15-30400, was dismissed without prejudice on December 1, 2015. On December 2, 2015, the minority members asked for a hearing on their motion for a temporary restraining order (**TRO**) in the state court action. Among other things, the TRO asks that the state court order Schultz and My Emergency Store from acting on behalf of the Debtor, to convey the Assets to the Debtor, to turnover the Debtor's website (StoveInACan.com) and domain name to them, that Mr. Bauer be named sole manager of the Debtor with authority to act in accordance with state law, and implicitly, for a determination that the Operating Agreement is not binding on the Debtor or the members. True and correct copies of the TRO and the request for a hearing are attached hereto as **Exhibit M**. *See* Docket No. 1 at 14 ¶ 35.

RESPONSE: The Non-MES Members admit the pendency of the State Court Action, allege that the TRO pleadings speak for themselves and otherwise deny Fact No. 33 for lack of knowledge.

ADDITIONAL RELEVANT FACTS

34.    The Debtor was formed on August 26, 2014 pursuant to a Statement of Conversion filed with the Utah Division of Corporations pursuant to Utah Code 48-3a-1045. *See* Docket No. 8, Exhibit 1.

35.    The Operating Agreement relied on by MES and Schultz as authority for their conduct, is not signed by any Non-MES Member. *See* Docket No. 8, Exhibit 4.

36.    The Operating Agreement reflects that MES made a cash contribution of $275,000 to the Debtor, (Docket No. 8 at Ex. C), a statement which Schultz as the owner and manager of MES now agrees is not true. *See* Docket No. 1 at 9 ¶ 12.

37.    Mr. Schultz in his Declaration (Docket No. 1 at 6-14) apparently contends that the value of MES' contribution to the Debtor is in the "Assets" which are the subject of a contract of purchase (*See* Docket No. 1 at 9 ¶ 12), although he admits that MES has never conveyed those assets to the Debtor and its agreement to do so is not in writing (*See* Docket No. 1 at 8 ¶ 8), and although he did not even bother to attach the Agreement to his Declaration. *See* Docket No. 1. In addition, while the Debtor contends it owns equitable title to the Assets (*See* Docket No. 9, pg. 12), and Schultz contends the Assets are worth more than $275,000 (*See* Docket No. 1 at pg. 9 ¶ 12), the Voluntary Petition alleges that the Debtor's assets are worth less than $100,000 (*See* Docket No. 1 at pg. 3).

38.    Although title to the intellectual property has always been held by MES, with the exception of a $10,000 payment made by Shari Anderson, the Debtor has made all of the payments on the promissory note which MES executed in favor of Firefly. *See* Docket No. 1 at 8 ¶ 8.

39.    On October 28, 2015 the Non-MES Members and the Debtor sued MES and

Schultz in the State Court Action, seeking monetary damages for various causes of action alleged against them as well as expulsion of MES as a member of the debtor. *See* Complaint, attached hereto as **Exhibit 1**.

40.     In the State Court Action, the Non-MES Members and the Debtor requested the court to issue a TRO against MES and Schultz from interfering with the Debtor's operation of its business. *See* Application for TRO (attached hereto as **Exhibit 2**), Memorandum in Support of Application for TRO (attached hereto as **Exhibit 3**), and Affidavit of Robert Bauer (attached hereto as **Exhibit 4**).

41.     On June 12, 2015, Schultz resigned as manager of the Debtor. *See* Docket No. 8, Ex. 6.

42.     According to the records of the Utah Division of Corporations, MES first became a manager of the Debtor on November 17, 2015 when Schultz caused on online change to be filed with the Division naming MES as Manager. *See* Docket No. 8, Ex. 10.

43.     Robert Bauer asserts that he is the sole Manager of the Debtor. *See* Ex. 4 at ¶ 29.

ARGUMENT AND AUTHORITIES

**The Bankruptcy Petition Was Filed Without Proper Authority and Must be Dismissed**

There are many disputed facts between MES and Schultz on the one hand and the Non-MES Members on the other. Did Schultz defraud the Non-MES Members in connection with raising funds for the Debtor and then using those funds to acquire the IP in the name of MES? What is the extent of MES member interest in the Debtor in light of the fact that it has failed to make any contribution to the company? Who is the manager of the Debtor? These and other disputes are currently pending before the First Judicial District Court of Cache County, Utah in

Case No. 150400151 ("**State Court Action**"). However, this court need not address any of these disputes because the Voluntary Petition on its face reveals that the Debtor's bankruptcy filing was not authorized pursuant to applicable Utah law.

The authority of a business entity to file bankruptcy is determined by state law. *Price, Trustee v. Gurney*, 324 U.S. 100 (1945); *In re D.B. Capital Holdings, LLC*, 463 B.R. 142 (10th Cir. BAP 2010) (unpublished) ("Bankruptcy courts must look to state law to determine who has authority to commence a bankruptcy case on behalf of a limited liability company."); *In re Crossover Financial, LLC*, 477 B.R. 196 (Bankr. D. Colo. 2012) ("The question of whether a corporation has authority to file bankruptcy is a question of state law."); *In re Yellow Cab Cooperative Ass'n*, 144 B.R. 505 (Bankr. D. Colo. 1992) (bankruptcy courts "look to state law and instruments of incorporation to determine whether a petition is filed with the proper corporate authority."). If a bankruptcy petition is filed without authority, a bankruptcy court has no alternative other than to dismiss the case. *Price, Trustee v. Gurney, supra* at 106 ("if the [bankruptcy] court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition").

On information and belief, MES and Schultz based their contention that the Operating Agreement's provision stating that the Manager "is empowered to make all decisions affecting the Company" (*See* Docket No. 8 at Ex. 4, pg. 13) as providing MES the authority to file a bankruptcy petition for the company. However, because the Operating Agreement is not signed by the Non-MES Members and because it is to be performed over a period exceeding one year (*See* Docket No. 8 at Ex. 4, pg. 6), it is unenforceable under the Utah Statute of Frauds. Utah Code Annon. § 25-5-4 (every agreement which by its terms is not to be performed within one

year from its making is void unless the agreement, or a note or memorandum of the agreement is in a writing signed by the party to be charged). *MediaNew Group, Inc. v. McCarthy*, 423 F. Supp. 2d 1213 (D. Utah 2006) (held, an oral option agreement performable over five years is unenforceable under Utah Code Annon. § 25-5-4); *Pease v. Parascript Management, Inc.*, 59 F. Supp. 3d 2010 (D. Colo. 2014) (held, oral agreement to pay a guaranteed salary over three years is unenforceable under Colorado Statute of Frauds).

Management of a LLC in Utah is governed by Utah Code § 48-3a-407. A LLC is member-managed unless the operating agreement specifically provides that it is to be manager-managed. Utah Code § 48-3a-407(1). In this instance, because the Operating Agreement is void under Utah's Statute of Frauds, it is unclear whether the Debtor is a member-managed or a manager-managed LLC. However, this court does not need to address whether the Debtor is member-managed or manager-managed, or even if any type of performance by MES or Schultz brings the agreement out of the statute, because Utah law requires the consent of *all* members for transactions outside the company's ordinary course of business. Utah Code § 48-3a-407(2)(d) (an act outside the ordinary course requires the affirmative vote or consent of all members of a member-managed LLC); Utah Code § 48-3a-407(3)(c)(ii) (an act outside the ordinary course requires the affirmative vote or consent of all members of a manager-managed LLC). Unlike the prior Act, the current Utah Limited Liability Company Act does not contain carve-out language stating "unless otherwise provided in the articles of organization or operating agreement. . ." in connection with this requirement.

The commencement of a bankruptcy case is an out of the ordinary course act. *In re D.B. Capital Management, supra* at *5 (filing a chapter 11 petition is not an ordinary course act); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003); *In re Zaragosa Properties,*

*Inc.*, Bankr. M.D. Fla. 1993). Other bankruptcy courts have enforced state law requirements for the consent of all members of an LLC in order to authorize a bankruptcy filing. *See in re Orchard at Hansen Park, LLC*, 347 B.R. 822 (Bankr. N.D. Tex. 2006) (decided using the Washington state statute requiring unanimous consent for dissolution).

In the present case, the Voluntary Petition shows on its face that it was not approved by or consented to by all of the members of the Debtor. *See* Docket No. 1 at 15-16. In fact, it appears that MES is the only member of the Debtor who voted in favor of the bankruptcy filing. *Compare* Docket No. 1 at 15-16 with Docket No. 3.

This case does not present the court with a need for reorganization.[4] This case is a dispute among owners of the Debtor to determine who has the right to direct and control the Debtor's business. The dispute is pending before the First District Court for Cache County, Utah and has been since October. The bankruptcy filing is nothing more than an attempt by MES and Schultz to wrestle control of the company from those members who have operated its affairs since it commenced business and avoid the expulsion from the company which they well deserve.

**Applications to Retain Professionals**

The retention of professionals to prosecute the bankruptcy case, being an act outside the course of affairs for the company, was made without proper authority, and the applications should be denied. Further, the application to retain counsel should be denied, as it appears counsel is not acting on behalf of the Debtor but instead is furthering the interests of MES and Schultz. Proposed counsel's conduct in filing a motion to stay litigation *which the Debtor brought* against MES and Schultz seeking monetary damages arising from their interference

---

[4] The Voluntary Petition estimates the Debtor has fewer than 50 creditors, less than $50,000 in assets and less than $100,000 in debts.

with the company's business operations is the best example of counsel's true loyalties.

**Motion to Extend Deadline for Filing Statements and Schedules and to Compel Turnover of Records and Motion for Order Compelling Release of Inventory**

These Motions are premised on the assumption that the written Operating Agreement is enforceable against the Non-MES Members and a recognition that MES is the manager of the Debtor. Whether MES is in fact a member, now that Schultz as its manager admits it did not make its capital contribution to the company, and whether the Debtor properly removed Robert Bauer as manager are issues yet to be resolved in the State Court Action. The fact that the State of Utah's records do not reflect MES as being the manager of the Debtor until a few weeks ago (*see generally* the exhibits to the Motion to Extend Deadlines) is yet another indication (along with the fact the agreement is unsigned and Schultz admits MES did not make its capital contribution) that the Operating Agreement was not the operative document governing the management of the company. Until MES and Schultz' rights with regard to management of Debtor are resolved by the state court in the State Court Action, these Motions are premature. In any event, the Motions should be denied because the Debtor did not file its bankruptcy case with proper authority.

Further, the release of inventory appears to be designed to enable MES and Schultz to cause the Debtor's assets to be used to fund payments on the promissory note to Firefly, an obligation on which MES is liable and the Debtor is not. For this reason alone, the Motion for an order releasing inventory should be denied.

**Motion to Stay State Court Proceeding**

MES and Schultz, through the Debtor, ask the court to stay the State Court Action, relying on allegations of an unfiled plan of reorganization which will purportedly pay funds from an undisclosed source in an undisclosed amount to the Non-MES Members will "resolve

everything."

First, the Motion is procedurally defective, in that requests for issuance of injunctive relief require the filing of an adversary proceeding. Fed. R. Bankr. P. 7001. In addition, the Motion does not set forth allegations which would entitle MES and Schultz to injunctive relief. *In re Medical Management Group, Inc.*, 302 B.R. 112 (10th Cir. BAP 2003) (unpublished) (party seeking injunctive relief must establish the four elements set out by the Tenth Circuit for such relief: (1) substantial likelihood of success on the merits, (2) irreparable harm, (3) harm to the movant outweighs the harm to the party to be enjoined, and (4) the injunction will not adversely affect the public interest).

Second, the Motion ignores the fact that the *Debtor is a Plaintiff* in the State Court Action and does not need to seek an injunction against itself. What the Motion seeks is to prevent the non-debtor members from pursuing a damages claim against MES and Schultz as well as a resolution of the management dispute. Because the State Court Action seeks to resolve the management dispute, the Debtor should be fully supportive of allowing the State Court Action to go forward. Instead, MES and Schultz, through Debtor's proposed counsel, seek to preempt a timely judicial resolution of whether they have the authority to control the affairs of the Debtor. The Motion alleges the claims asserted in the action belong to the Debtor. While the Non-MES Members believe the claims are personal to them, there's no dispute that the claims don't belong to MES and Schultz, and yet through the Motion they seek to interfere with the determination of these claims just as they have interfered with management's conduct of the company's affairs.

Wherefore, the Non-MES Members respectfully request the court deny the Applications and Motions.

DATED: January 4, 2016.

HOLLAND & HART LLP


＿/s/ Mona L. Burton＿＿＿＿＿＿＿＿＿
Mona L. Burton
Ellen E. Ostrow
*Counsel for Non-MES Members*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 4, 2016, the foregoing

CONSOLIDATED OBJECTION has been served via the Court's electronic filing notification

system on:

David P. Billings
*Proposed counsel for Debtor*
Stormont Billings, PLLC
525 East 100 South
Suite 275B
Salt Lake City, UT 84102
Email: david@stormontbillings.com

8358146_1

# EXHIBIT 1

SHAWN D. TURNER (5813)
TURNER & STAMOS, LC
5383 South 900 East, Ste 104
Salt Lake City, UT 84117
Tel: (801) 261-1458
Fax: (801) 261-1470

*Attorneys for Plaintiff*

---

## IN THE FIRST JUDICIAL DISTRICT COURT
## IN AND FOR THE STATE OF UTAH, CACHE COUNTY DEPARTMENT

| | |
|---|---|
| STOVE IN A CAN, LLC, ROBERT BAUER, RICHARD CHEA, JERRY VERGIN, BOUN-3-TRUCKING, INC. JANE LIAU, CHEW YUEN LIAU, JOSEPH BRADBURY, MARGIE BRADBURY, REY P. ROA and THELMALONG | **COMPLAINT** |
| Plaintiffs, | Tier 3 |
| vs. | Case No. Judge : |
| GUS SCHULTZ aka GUST SCHULTZ and MY EMERGENCY STORE, LLC | |
| Defendant, | |

---

Plaintiffs, by and through their counsel, hereby complain and allege of Defendants as follows:

### PARTIES

1.     Plaintiff Stove in a Can, LLC is a Utah limited Liability Company with its registered office in Cache County, State of Utah.

2.     The remaining Plaintiffs are all members of Stove in a Can, LLC (hereafter "Members").

3.     Defendant Gus Schultz aka Gust Schultz is an individual who upon information and

1

belief is a resident of Cache County, State of Utah ("Schultz").

4. Defendant My Emergency Store, LLC is a Utah Limited Liability Company with its principal offices located in Cache County, State of Utah {"MES")..

## JURISDICTION AND VENUE

4.     Jurisdiction is appropriate in this court pursuant to Utah Code Annotated §78A-5-102.

5.     Venue is appropriate in this Court pursuant to Utah Code Annotated §78B-3-304.

6.     This case is a Tier 3 case pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## GENERAL ALLEGATIONS

7.     Firefly, Inc. developed and patented a product called Stove in a Can.

8.     Shultz decided to acquire all rights to Stove in a Can from Firefly.

9.     Schultz recruited Richard Chea to help him develop the Stove in a Can business..·

10.     Mr. Chea assisted by travelling with Schultz to visit potential customers, vendors and suppliers and by fronting the cost of these trips from personal funds.

11.     Mr. Chea even allowed Schultz to live in and operate out of Mr. Chea's home for nearly a year.

12.     When it became apparent that Schultz was going to be unable to acquire Stove in a Can on his own he asked Mr. Chea to find potential investors for a limited liability company.

13.     Mr. Chea approached the remaining Plaintiffs above to see if they would be interested in becoming part of the Company.

14.     A meeting was scheduled in the fall of 2014 in Salt Lake County.

15.     Present at the meeting were Schultz Jerry Vergin, Robert Bauer, Orvanh & Boun Laaw, Jane Cawit and Chew Yuen Liau, Joseph & Margie Bradbury, Deborah French and Louis James.

16.     Schultz conducted the meeting.

17. Schultz made a presentation at the meeting.

## FIRST CAUSE OF ACTION

### ("Fraud")

18. Plaintiffs reaffirm and reallege paragraphs 1-17 above as though fully set forth herein.

19. At the Fall of 2014 meeting Schultz claimed that he was the current owner of the Stove in a Can product and all of its intellectual property.

18. Schultz represented that he owned these items free and clear of any debts or obligations.

19. Schultz represented that he had contributed in excess of $500,000.00 in acquiring and developing Stove in a Can.

20. Schultz represented that he was seeking investors to contribute capital to Stove in a Can, LLC for the purpose of acquiring inventory and paying for marketing and other expenses.

21. None of these representations were true.

22. The Members, except Mr. Chea, reasonably relied on the representations of Schultz.

23. As a result of that reliance they contributed capital to Stove in a Can, LLC.

WHEREFORE Plaintiffs prays for relief as set forth below:

## SECOND CAUSE OF ACTION

### ("Fraud")

24. Plaintiffs reaffirm and realleges paragraphs 1-23 above.

25. At the time Schultz was soliciting the Plaintiffs for investments in a Stove in a Can he failed to disclose that he had previously been arrested for communications fraud or that he was indebted to the Internal Revenue Service fro nearly one million dollars.

26. The failure to disclose this information was intentional and done with the intent to withhold material information from the Plaintiffs in order to induce them to invest with Schultz.

3

WHEREFORE Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty)

27.     Plaintiffs reaffirm and reallege paragraphs 1-26 above as though set forth fully herein.

28.     At the time of its creation and shortly thereafter, Schultz individually and as a purported Manager of My Emergency Store, LLC alleged to be Managers of Stove in a Can, LLC.

29.     As managers and/or members they owed a fiduciary duty to the Company and the other members.

30.     They breached this duty by misrepresenting how the initial capital raised from the Members would be used, by using the capital to acquire the Stove in a Can intellectual property from Firefly and then vesting that property in My Emergency Store, LLC.

31.     They further violated their fiduciary duty through misappropriating Company inventory and proceeds and keeping them for their own benefit to the detriment of the rest of the Members.

WHEREFORE Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Tortious Interference With Contractual Relations)

32.     Plaintiffs reaffirm and reallege paragraphs 1-31 above as though fully set forth herein.

33.     Stove in a Can, LLC currently has one Manager, Robert Bauer.

34.     In order to sell its product Stove in a Can makes direct online sales, makes sales through Amazon and makes sales at trade shows among other avenues.

35.     Inventory for Stove in a Can is managed by a "facilitator", specifically International Fullfillment Solutions and IFS 360.

36.  Schultz has tortuously interfered with the Company's relationship with the fulfillment company by representing that he is the manager of the Company and demanding that the fulfillment company ship product without company authorization and block access of the authorized personnel of the Company to the inventory.

37.  As a direct result of Schultz's interference, the fulfillment company refuses to release inventory or funds to the Company.

38.  The Company maintains a website and domain name through GoDaddy.com.

39.  Schultz has seized control of the website and domain and locked out the authorized representatives of the Company.

40.  The Company maintains an account with Amazon for sales of the Company product.

41.  Upon information and belief, Schultz has opened a separate account with Amazon, purportedly on behalf of the Company, and is diverting sales and funds through that site.

42.  These actions have resulted in serious injury to the Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (Conversion)

43.  Plaintiffs reaffirm and realleges paragraphs 1-42 above as though set forth fully herein.

44.  Schultz has taken cash, inventory, and other assets belonging to the Company without the Company's authorization and or lawful justification and has failed and/or refused to return the same to the Company depriving the company of the use and possession of those items.

.WHEREFORE Plaintiff Stove in a Can, LLC prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### (Expulsion of Members)

45. Plaintiffs reaffirm and realleges paragraphs 1-44 above as though fully set forth herein.

46. The Defendants claim to be members of the Company.

47. The Defendants have engaged in wrongful conduct that has adversely and materially affected the company's business.

48. The Defendants have willfully and persistently committed a material breach of their fiduciary duties to the remaining members of the Company under UCA §48-2c-807.

49. The Defendants have engaged in conduct relating to the Company's business which makes it not reasonably practicable to carry on business with them.

WHEREFORE Plaintiffs pray for relief as set forth below

## SEVENTH CAUSE OF ACTION

### (Accounting)

50. Plaintiffs reaffirm and realleges paragraph 1-49 above as though set forth fully herein.

51. By virtue of their positions as Managers and/or Members of the Company Defendants owed the Company a fiduciary duty.

52. Defendants duties include but are not limited to a duty to account for the assets and profits of the Company that have been in their possession and control.

53. Defendants should be required to provide an accounting for all such assets and profits.

WHEREFORE Plaintiffs pray for relief as set forth below.

## EIGHTH CAUSE OF ACTION

### (Alter Ego)

54. Plaintiffs reaffirm and realleges paragraph 1-53 above as though set forth fully herein.

6

55. Schultz used MES for purposes of misappropriating funds from the Plaintiffs.

56. There is a unity of interest and ownership between Schultz and MES such that separate personalities of the company and Schultz no longer, if they ever, exist.

57. Observance of the corporate form would sanction the fraud perpetrated on the Plaintiffs, promote injustice and an inequitable result would follow.

58. Furthermore Schultz personally participated in TEM's tortious conduct relating to the intellectual property and should accordingly be personally liable for the harms caused thereby.

## NINTH CAUSE OF ACTION

### (Injunctive Relief)

59. Plaintiffs reaffirm and realleges paragraph 1-58 above as though set forth fully herein.

60. The Defendants have made claims to the State of Utah , the Company's customers, vendors and suppliers that they are the lawful officers of the Company and can and do speak on its behalf.

61. The result of this action has been to cause confusion among the individuals contacted to cause false or misleading information to be presented to the general public, to have caused the Company's inventory to be frozen denying it access to continue to meet sales obligations and to market the company's products.

62. Unless the Defendants are required to return control of the Company's website and domain name, to  cease doing business under the company's name including operating an alternative account on Amazon and to cease interfering with the collection of proceeds from sales and the distribution of inventory, the Company's reputation in the marketplace will be irreparably harmed.

63. Issuing the injunction will cause no harm to the Defendants, but the failure to issue the injunction will cause irreparable harm to the Plaintiffs.

64. Issuance of the order is in the public interest.

65. There is a substantial likelihood that Plaintiffs will prevail on the merits of this action.

## PRAYER FOR RELIEF

1  On Plaintiffs' First, Second and Third Causes of Action For judgment against the Defendants in an amount to be proven at trial but believed to be in excess of $400,000.00

2.  On Plaintiffs' Fourth and Fifth Cause of Action for damages in an amount to be proven at trial, but believed to be in excess of $70,000.00

3.  On Plaintiffs' Sixth Cause of Action for an order expelling the Defendants as members of the Company.

4.  On Plaintiffs' Seventh Cause of Action for an order requiring the Defendants to provide an accounting of all assets, profits and expenses relating to the Company.

5.  On Plaintiffs' Eighth Cause of action for an order finding that Schultz and EMS are alter egos of one another and each are responsible for the acts of the other in respect to the items complained of herein.

6.  On Plaintiffs' Ninth Cause of Action for an Injunction prohibiting the Defendants from representing to anyone that they represent the Company, requiring the Defendants to return to the Plaintiffs' control all intellectual property relating to Stove in a Can, returning control of the Amazon account, and GoDaddy website and domain name to the Company, and designating Robert Bauer as the sole manager of the Company with authority to act in its name and conduct its business in accordance with statute.

7.  For attorney fees, costs of court and such other further relief as this Court deems

appropriate.

Dated 28th day of October, 2015.

TURNER AND STAMOS, LC

_____
Shawn D. Turner
Attorney for Plaintiffs

# EXHIBIT 2

SHAWN D. TURNER (5813)
TURNER & STAMOS, LC
5383 South 900 East, Ste 104
Salt Lake City, UT 84117
Tel: (801) 261-1458
Fax: (801) 261-1470

*Attorneys for Plaintiff*

---

IN THE FIRST JUDICIAL DISTRICT COURT
IN AND FOR THE STATE OF UTAH, CACHE COUNTY DEPARTMENT

| | |
|---|---|
| STOVE IN A CAN, LLC, ROBERT BAUER, RICHARD CHEA, JERRY VERGIN, BOUN-3-TRUCKING, INC. JANE LIAU, CHEW YUEN LIAU, JOSEPH BRADBURY, MARGIE BRADBURY, REY P. ROA and THELMA LONG<br><br>Plaintiffs,<br><br>vs.<br><br>GUS SCHULTZ aka GUST SCHULTZ and MY EMERGENCY STORE, LLC<br><br>Defendant, | **APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br><br><br>Case No. 150400141<br>Judge : Brian Cannell |

---

Pursuant to Rule 65A of the Utah Rules of Civil Procedure, plaintiff moves the court for a temporary restraining order preventing defendants from continuing to use plaintiff's property, from interfering with plaintiff's business relationships, from encumbering, selling, transferring, hypothecating or otherwise divesting themselves of the intellectual property relating to Stove in a Can and from using any of plaintiff's trade secrets and proprietary information.

Plaintiff's application is based on the following grounds:

1. A temporary restraining order is the appropriate legal remedy to enjoin the breach of an

1

enforceable agreement.

2. Plaintiff will suffer immediate irreparable harm unless the court issues a temporary restraining order preventing defendant from interfering with plaintiff's business and plaintiff's customer relationships including encumbering, selling, transferring, hypothecating or otherwise divesting themselves of the intellectual property relating to Stove in a Can.

3. Plaintiff will suffer immediate irreparable harm unless the court issues a temporary restraining order ordering defendant to restrain from disclosing, revealing, or using any of plaintiff's trade secrets or confidential information.

4. The threat of injury to plaintiff outweighs whatever damage a temporary restraining order may cause defendant.

5. Issuance of a temporary restraining order will not be adverse to the public interest.

6. There is a substantial likelihood that plaintiff will prevail on the merits of the claims, or the case presents serious issues which should be the subject of further review and litigation.

This Application is supported by a verified complaint or affidavits stating specific facts filed with the court and by an accompanying memorandum of points and authorities.

Dated 3rd day of November, 2015.

TURNER AND STAMOS, LC

Shawn D. Turner
Attorney for Plaintiffs

# EXHIBIT 3

SHAWN D. TURNER (5813)
TURNER & STAMOS, LC
5383 South 900 East, Ste 104
Salt Lake City, UT 84117
Tel: (801) 261-1458
Fax: (801) 261-1470

*Attorneys for Plaintiff*

IN THE FIRST JUDICIAL DISTRICT COURT
IN AND FOR THE STATE OF UTAH, CACHE COUNTY DEPARTMENT

| | |
|---|---|
| STOVE IN A CAN, LLC, ROBERT BAUER, RICHARD CHEA, JERRY VERGIN, BOUN-3-TRUCKING, INC. JANE LIAU, CHEW YUEN LIAU, JOSEPH BRADBURY, MARGIE BRADBURY, REY P. ROA and THELMA LONG<br><br>Plaintiffs,<br><br>vs.<br><br>GUS SCHULTZ aka GUST SCHULTZ and MY EMERGENCY STORE, LLC<br><br>Defendant, | **MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br><br>Case No. 150400141<br>Judge : Brian Cannell |

Plaintiffs, by and through their counsel, hereby submit their Memorandum in Support of Motion for Temporary Restraining Order.

## STATEMENT OF FACTS

1. Plaintiff Stove in a Can, LLC is a Utah limited Liability Company with its registered office in Cache County, State of Utah.

2. The remaining Plaintiffs are all members of Stove in a Can, LLC (hereafter "Members").

3. Defendant Gus Schultz aka Gust Schultz is an individual who upon information and

belief is a resident of Cache County, State of Utah ("Schultz").

4. Defendant My Emergency Store, LLC is a Utah Limited Liability Company with its principal offices located in Cache County, State of Utah {"MES").

4.     Jurisdiction is appropriate in this court pursuant to Utah Code Annotated §78A-5-102.

5.     Venue is appropriate in this Court pursuant to Utah Code Annotated §78B-3-304.

6.     This case is a Tier 3 case pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.

7.     Firefly, Inc. developed and patented a product called Stove in a Can.

8.     Shultz decided to acquire all rights to Stove in a Can from Firefly.

9.     Schultz recruited Richard Chea to help him develop the Stove in a Can business..

10.     Mr. Chea assisted by travelling with Schultz to visit potential customers, vendors and suppliers and by fronting the cost of these trips from personal funds.

11.     Mr. Chea even allowed Schultz to live in and operate out of Mr. Chea's home for nearly a year.

12.     When it became apparent that Schultz was going to be unable to acquire Stove in a Can on his own he asked Mr. Chea to find potential investors for a limited liability company.

13.     Mr. Chea approached the remaining Plaintiffs above to see if they would be interested in becoming part of the Company.

14.     A meeting was scheduled in the fall of 2014 in Salt Lake County.

15.     Present at the meeting were Schultz Jerry Vergin, Robert Bauer, Orvanh & Boun Laaw, Jane Cawit and Chew Yuen Liau, Joseph & Margie Bradbury, Deborah French and Louis James.

16.     Schultz conducted the meeting.

17.     Schultz made a presentation at the meeting.

18.     At the Fall of 2014 meeting Schultz claimed that he was the current owner of the Stove in

a Can product and all of its intellectual property.

19.     Schultz represented that he owned these items free and clear of any debts or obligations.

20.     Schultz represented that he had contributed in excess of $500,000.00 in acquiring and developing Stove in a Can.

21.     Schultz represented that he was seeking investors to contribute capital to Stove in a Can, LLC for the purpose of acquiring inventory and paying for marketing and other expenses.

22.     None of these representations were true.

23.     The Members, except Mr. Chea, reasonably relied on the representations of Schultz.

24.     As a result of that reliance they contributed capital to Stove in a Can, LLC.

25.     At the time Schultz was soliciting the Plaintiffs for investments in a Stove in a Can he failed to disclose that he had previously been arrested for communications fraud or that he was indebted to the Internal Revenue Service for nearly one million dollars.

26.     The failure to disclose this information was intentional and done with the intent to withhold material information from the Plaintiffs in order to induce them to invest with Schultz.

27.     At the time of its creation and shortly thereafter, Schultz individually and as a purported Manager of My Emergency Store, LLC alleged to be Managers of Stove in a Can, LLC.

28.     As managers and/or members they owed a fiduciary duty to the Company and the other members.

29.     They breached this duty by misrepresenting how the initial capital raised from the Members would be used, by using the capital to acquire the Stove in a Can intellectual property from Firefly and then vesting that property in My Emergency Store, LLC.

30.     They further violated their fiduciary duty through misappropriating Company inventory and proceeds and keeping them for their own benefit to the detriment of the rest of the Members.

31. Plaintiffs reaffirm and reallege paragraphs 1-31 above as though fully set forth herein.

32. Stove in a Can, LLC currently has one Manager, Robert Bauer.

33. In order to sell its product Stove in a Can makes direct online sales, makes sales through Amazon and makes sales at trade shows among other avenues.

34. Inventory for Stove in a Can is managed by a "facilitator", specifically International Fullfillment Solutions and IFS 360.

35. Schultz has tortuously interfered with the Company's relationship with the fulfillment company by representing that he is the manager of the Company and demanding that the fulfillment company ship product without company authorization and block access of the authorized personnel of the Company to the inventory.

36. As a direct result of Schultz's interference, the fulfillment company refuses to release inventory or funds to the Company.

37. The Company maintains a website and domain name through GoDaddy.com.

38. Schultz has seized control of the website and domain and locked out the authorized representatives of the Company.

39. The Company maintains an account with Amazon for sales of the Company product.

40. Upon information and belief, Schultz has opened a separate account with Amazon, purportedly on behalf of the Company, and is diverting sales and funds through that site.

41. These actions have resulted in serious injury to the Plaintiffs.

42. Schultz has taken cash, inventory, and other assets belonging to the Company without the Company's authorization and or lawful justification and has failed and/or refused to return the same to the Company depriving the company of the use and possession of those items.

43. The Defendants claim to be members of the Company.

4

44. The Defendants have engaged in wrongful conduct that has adversely and materially affected the company's business.

45. The Defendants have willfully and persistently committed a material breach of their fiduciary duties to the remaining members of the Company under UCA §48-2c-807.

46. The Defendants have engaged in conduct relating to the Company's business which makes it not reasonably practicable to carry on business with them.

47. By virtue of their positions as Managers and/or Members of the Company Defendants owed the Company a fiduciary duty.

48. Defendants duties include but are not limited to a duty to account for the assets and profits of the Company that have been in their possession and control.

49. Defendants should be required to provide an accounting for all such assets and profits.

50. Schultz used MES for purposes of misappropriating funds from the Plaintiffs.

51. There is a unity of interest and ownership between Schultz and MES such that separate personalities of the company and Schultz no longer, if they ever, exist.

52. Observance of the corporate form would sanction the fraud perpetrated on the Plaintiffs, promote injustice and an inequitable result would follow.

53. Furthermore Schultz personally participated in TEM's tortious conduct relating to the intellectual property and should accordingly be personally liable for the harms caused thereby.

54. The Defendants have made claims to the State of Utah , the Company's customers, vendors and suppliers that they are the lawful officers of the Company and can and do speak on its behalf.

55. The result of this action has been to cause confusion among the individuals contacted to

cause false or misleading information to be presented to the general public, to have

caused the Company's inventory to be frozen denying it access to continue to meet sales

obligations and to market the company's products.

56. Unless the Defendants are required to return control of the Company's website and

domain name, to cease doing business under the company's name including operating an

alternative account on Amazon and to cease interfering with the collection of proceeds

from sales and the distribution of inventory, the Company's reputation in the marketplace

will be irreparably harmed.

57. Issuing the injunction will cause no harm to the Defendants, but the failure to issue the

injunction will cause irreparable harm to the Plaintiffs.

58. Issuance of the order is in the public interest.

59. There is a substantial likelihood that Plaintiffs will prevail on the merits of this action.

**ARGUMENT**

## THE COURT SHOULD GRANT THE PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER.

"Injunctive relief is fundamentally preventive in nature, and an injunction serves to '

preserve the status quo pending the outcome of the case.'"

*Zagg, Inc. v. Harmer*, 345 P.3d 1273, 1275 (Utah App. 2015)

Rule 65A of the Utah Rules of Civil Procedure provides (in pertinent part):

(e) **Grounds.** A restraining order or preliminary injunction may issue only upon a showing by the applicant that:

(e)(1) The applicant will suffer irreparable harm unless the order or injunction issues;

(e)(2) The threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined;

(e)(3) The order or injunction, if issued, would not be adverse to the public interest; and

(e)(4) There is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation.

Each of the four criteria are met in this case.

## A. PLAINTIFFS' WILL SUFFER IRREPARABLE HARM UNLESS THE INJUNCTION IS ENTERED.

Irreparable harm is generally considered the most important basis for granting injunctive relief. *Systems Concepts, Inc. v. Dixon*, 669 P.2d 421 (Utah 1983). A loss of business and goodwill may constitute "irreparable harm" susceptible to injunction. *Hunsaker v. Kersh*, 991 P.2d 67, 70 (Utah 1999).

In the instant case, Plaintiffs' face irreparable harm through damage to their reputation in the marketplace due to an inability to fill orders being made through online purchases. This is because, Defendants have hijacked the Company's website, tied up the inventory at the Fulfillment center, and have diverted sales information from the Company's Amazon account. Failure to adequately and promptly fill orders will result in negative reviews which will have permanent and long term effects on the Company's relationship in the marketplace and which could result in a loss of access to Amazon and other online marketplaces.

In addition, the Company's current identity and viability revolves around the Stove in a Can product. Unless the Defendants are restrained from divesting themselves of the wrongfully procured intellectual property rights, obtained from Firefly with the Plaintiffs' money, the Company will have no viability and it will be essentially "out of business". This will likewise eliminate any "leverage" the Company has to obtain its intellectual property back. The Utah Court of Appeals has recognized that the loss of this "leverage" constitutes an "irreparable harm". *Zagg, Inc. v. Harmer*, 345 P.3d 1273, 1276 (Utah App. 2015)

Because the harm that will be suffered by the Plaintiffs is irreparable, Plaintiffs request the injunction be granted.

### B. THE THREATENED INJURY TO THE APPLICANT OUTWEIGHS ANY POTENTIAL HARM TO THE DEFENDANTS.

As demonstrated above the potential harm to the Plaintiffs without the injunction will be devastating. Granting of the injunctive relief, will have no potential negative effects on the Defendants. The proposed order seeks merely to return the parties to the position they were in prior to the recent spate of outrageous actions on the part of the Defendants. It will preserve the positions of the parties, as they were represented by the Defendants, at the time they made their misrepresentations to the Plaintiff Members of the Company.

### C. THE REQUESTED ORDER IS IN HARMONY WITH THE PUBLIC INTEREST.

Entry of the Order is in the publics' best interest. This is true because it allows the general public to receive the items they are purchasing from the Company. It does not allow for the diversion of funds to individuals without Company authorization or the ability to fulfill the publics' orders. It does allow the Company to remain in business and maintain its relationships with Suppliers, Vendors and customers.

It is in the publics' interest because it preserves the subject matter of the litigation, namely the Stove in a Can intellectual property, for a determination by the Court of the parties respective interests. Without the injunctive relief it is likely the Defendants will seek to place the intellectual property further beyond the Company's reach.

8

## D. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

The final condition for granting a preliminary injunction is that the party applying is likely to prevail on the merits or the case presents serious issues on the merits that should be the subject matter of additional litigation.

Plaintiffs believe that the Affidavit of Robert Bauer clearly demonstrates that the Plaintiffs have a substantial likelihood of success on the merits. It is however indisputable that at a bare minimum the allegations contained therein present serious issues on the merits which if not disputed would result in success and which if disputed would constitute serious issues needing further litigation.

## CONCLUSION

Plaintiffs have set forth the required showing to entitle them to a temporary restraining order in this action. Plaintiffs therefore request an Order prohibiting the Defendants from representing to anyone that they represent the Company, requiring the Defendants to return to the Plaintiffs' control all intellectual property relating to Stove in a Can, returning control of the Amazon account, and GoDaddy website and domain name to the Company, and designating Robert Bauer as the sole manager of the Company with authority to act in its name and conduct its business in accordance with statute.

Dated 3rd day of November, 2015.

TURNER AND STAMOS, LC

Shawn D. Turner
Attorney for Plaintiffs

# EXHIBIT 4

SHAWN D. TURNER (5813)
TURNER & STAMOS, LC
5383 South 900 East, Ste 104
Salt Lake City, UT 84117
Tel: (801) 261-1458
Fax: (801) 261-1470

*Attorneys for Plaintiff*

---

## IN THE FIRST JUDICIAL DISTRICT COURT
## IN AND FOR THE STATE OF UTAH, CACHE COUNTY DEPARTMENT

| | |
|---|---|
| STOVE IN A CAN, LLC, ROBERT BAUER, RICHARD CHEA, JERRY VERGIN, BOUN-3-TRUCKING, INC. JANE LIAU, CHEW YUEN LIAU, JOSEPH BRADBURY, MARGIE BRADBURY, REY P. ROA and THELMA LONG | **AFFIDAVIT OF ROBERT BAUER** |
| Plaintiffs, | Case No. 150400141<br>Judge :   Brian Cannell |
| vs. | |
| GUS SCHULTZ aka GUST SCHULTZ  and MY EMERGENCY STORE, LLC | |
| Defendant, | |

Robert Bauer, having been duly sworn does hereby depose and say:

1. That he is above 21 years of age and does have personal knowledge of the facts set forth below excepting where such facts are stated upon information and belief, which facts have been determined through adequate and diligent investigation.

2. Plaintiff Stove in a Can, LLC is a Utah limited Liability Company with its registered office in Cache County, State of Utah.

3. The remaining Plaintiffs are all members of Stove in a Can, LLC (hereafter "Members").

1

4. Defendant Gus Schultz aka Gust Schultz is an individual who upon information and belief is a resident of Cache County, State of Utah ("Schultz").

5. Defendant My Emergency Store, LLC is a Utah Limited Liability Company with its principal offices located in Cache County, State of Utah {"MES"}.

6. Firefly, Inc. developed and patented a product called Stove in a Can.

7. Shultz decided to acquire all rights to Stove in a Can from Firefly.

8. Schultz recruited Richard Chea to help him develop the Stove in a Can business..

9. Mr. Chea assisted by travelling with Schultz to visit potential customers, vendors and suppliers and by fronting the cost of these trips from personal funds.

10. When it became apparent that Schultz was going to be unable to acquire Stove in a Can on his own he asked Mr. Chea to find potential investors for a limited liability company.

11. Mr. Chea approached the remaining Plaintiffs above to see if they would be interested in becoming part of the Company.

12. A meeting was scheduled in the fall of 2014 in Salt Lake County.

13. Present at the meeting were Schultz Jerry Vergin, Robert Bauer, Orvanh & Boun Laaw, Jane Cawit and Chew Yuen Liau, Joseph & Margie Bradbury, Deborah French and Louis James.

14. Schultz conducted the meeting.

15. Schultz made a presentation at the meeting.

16. At the Fall of 2014 meeting Schultz claimed that he was the current owner of the Stove in a Can product and all of its intellectual property.

17. Schultz represented that he owned these items free and clear of any debts or obligations.

18. Schultz represented that he had contributed in excess of $500,000.00 in acquiring and

developing Stove in a Can.

19. Schultz represented that he was seeking investors to contribute capital to Stove in a Can, LLC for the purpose of acquiring inventory and paying for marketing and other expenses.

20. None of these representations were true.

21. I reasonably relied on the representations of Schultz.

22. As a result of that reliance I contributed capital to Stove in a Can, LLC.

23. At the time Schultz was soliciting the Plaintiffs for investments in a Stove in a Can he failed to disclose that he had previously been arrested for communications fraud or that he was indebted to the Internal Revenue Service for nearly one million dollars.

24. Had I known of these facts I would not have invested in Stove in a Can, LLC.

25. At the time of its creation and shortly thereafter, Schultz individually and as a purported Manager of My Emergency Store, LLC alleged to be Managers of Stove in a Can, LLC.

26. As managers and/or members they owed a fiduciary duty to the Company and the other members.

27. They breached this duty by misrepresenting how the initial capital raised from the Members would be used, by using the capital to acquire the Stove in a Can intellectual property from Firefly and then vesting that property in My Emergency Store, LLC.

28. They further violated their fiduciary duty through misappropriating Company inventory and proceeds and keeping them for their own benefit to the detriment of the rest of the Members.

29. I am currently the sole manager of Stove in a Can, LLC.

30. In order to sell its product Stove in a Can makes direct online sales, makes sales through Amazon and makes sales at trade shows among other avenues.

31. Inventory for Stove in a Can is managed by a "facilitator", specifically International Fullfillment Solutions and IFS 360.

32. Schultz has tortuously interfered with the Company's relationship with the fulfillment company by representing that he is the manager of the Company and demanding that the fulfillment company ship product without company authorization and block access of the authorized personnel of the Company to the inventory.

33. As a direct result of Schultz's interference, the fulfillment company refuses to release inventory or funds to the Company.

34. The Company maintains a website and domain name through GoDaddy.com.

35. Schultz has seized control of the website and domain and locked out the authorized representatives of the Company.

36. The Company maintains an account with Amazon for sales of the Company product.

37. Upon information and belief, Schultz has opened a separate account with Amazon, purportedly on behalf of the Company, and is diverting sales and funds through that site.

38. These actions have resulted in serious injury to the Plaintiffs.

39. Schultz has taken cash, inventory, and other assets belonging to the Company without the Company's authorization and or lawful justification and has failed and/or refused to return the same to the Company depriving the company of the use and possession of those items.

40. The Defendants claim to be members of the Company.

41. The Defendants have engaged in wrongful conduct that has adversely and materially affected the company's business.

42. The Defendants have willfully and persistently committed a material breach of their fiduciary duties to the remaining members of the Company under UCA §48-2c-807.

43. The Defendants have engaged in conduct relating to the Company's business which makes it not reasonably practicable to carry on business with them.

44. By virtue of their positions as Managers and/or Members of the Company Defendants owed the Company a fiduciary duty.

45. Defendants duties include but are not limited to a duty to account for the assets and profits of the Company that have been in their possession and control.

46. Defendants should be required to provide an accounting for all such assets and profits.

47. Schultz used MES for purposes of misappropriating funds from the Plaintiffs.

48. Upon information and belief there is a unity of interest and ownership between Schultz and MES such that separate personalities of the company and Schultz no longer, if they ever, exist.

49. Observance of the corporate form would sanction the fraud perpetrated on the Plaintiffs, promote injustice and an inequitable result would follow.

50. Furthermore Schultz personally participated in TEM's tortious conduct relating to the intellectual property and should accordingly be personally liable for the harms caused thereby.

51. The Defendants have made claims to the State of Utah , the Company's customers, vendors and suppliers that they are the lawful officers of the Company and can and do speak on its behalf.

52. The result of this action has been to cause confusion among the individuals contacted to cause false or misleading information to be presented to the general public, to have

caused the Company's inventory to be frozen denying it access to continue to meet sales obligations and to market the company's products.

53. Unless the Defendants are required to return control of the Company's website and domain name, to cease doing business under the company's name including operating an alternative account on Amazon and to cease interfering with the collection of proceeds from sales and the distribution of inventory, the Company's reputation in the marketplace will be irreparably harmed.

54. Issuing the injunction will cause no harm to the Defendants, but the failure to issue the injunction will cause irreparable harm to the Plaintiffs.

55. Issuance of the order is in the public interest.

56. There is a substantial likelihood that Plaintiffs will prevail on the merits of this action.

FURTHER AFFIANT SAYETH NOT:

Dated 2ND day of November, 2015.

_____
Robert Bauer

STATE of UTAH     )
                 ss:
COUNTY of SALT LAKE   )
      Tooele

DIANE SHIELDS
NOTARY PUBLIC
STATE OF UTAH
COMMISSION #674913
My Commission Expires Feb. 21, 2018

      I hereby certify that Robert Bauer, the signatory of the attached affidavit, having been duly sworn did appear before me on the 2nd day of November, 2015 and did affirm he signed the same.

_____
Notary Public

6